ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| GUILLERMO RIVERA RAMOS<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES<br><br>Recurrido | TA2026RA00148 | *Revisión Administrativa,* procedente del Departamento de Recursos Naturales y Ambientales<br><br>Querella Núm.: 25-257-ZC<br><br>Sobre: Solicitud de Autorización para Actividades en la Zona Protegida del Carso |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Prats Palerm, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2026.

Comparece Guillermo Rivera Ramos ("señor Rivera Ramos" o "Recurrente") mediante recurso de revisión judicial presentado el 30 de marzo de 2026. Nos solicita la revocación de una *Resolución y Notificación* emitida por el Departamento de Recursos Naturales y Ambientales ("DRNA" o "Recurrido"), el 4 de marzo de 2026 y notificada el 6 de marzo de 2026. En virtud del referido dictamen, el DRNA dejó sin efecto la *Resolución* del 17 de noviembre de 2025 y sostuvo la denegatoria de la Solicitud de Autorización presentada por el recurrente.

Por los fundamentos expuestos a continuación, se *confirma* el dictamen administrativo recurrido.

**I.**

El caso que nos ocupa tuvo su génesis procesal el 4 de noviembre de 2024 cuando el señor Rivera Ramos presentó ante el DRNA una *Solicitud de Autorización para Actividades en la Fisiografía Cársica* (Solicitud de Autorización) para la construcción de una vivienda unifamiliar en la Carretera PR-448, Km. 2.6 del Bo. Eneas de San Sebastián. El 16 de septiembre de 2025 el DRNA emitió una Denegatoria. En esta, indicó que la parcela donde se propone realizar dicha construcción está dentro de la

delimitación del Área de Planificación Especial Restringida del Carso (APE-RC), según consta en el *Plan y Reglamento del Área de Planificación Especial del Carso* (PRAPEC), Reglamento Núm. 8486, aprobado el 4 de julio de 2014. Además, señaló que el área está calificada como Conservación de Recursos (CR) y, a su vez, está clasificada, por el Plan de Usos de Terrenos de Puerto Rico (PUT) de la Junta de Planificación, como Suelo Rústico Especialmente Protegido ecológico (SREP-E). Por consiguiente, determinó que la normativa aplicable prohíbe la nivelación de terrenos en la fisiografía cársica sin la autorización del DRNA, así como la extracción de materiales de la corteza terrestre y la lotificación o segregación en el Área Restringida del Carso. Asimismo, concluyó que la Tabla 8 de la Sección 4.1.6 del Reglamento Núm. 8486, *supra*, no permite construcciones en la calificación CR. Por tal razón, denegó la referida Solicitud de Autorización.

En reacción, el señor Rivera Ramos presentó un escrito intitulado *Impugnación de Denegatoria*. En síntesis, sostuvo que ninguna de las actividades prohibidas y/o condicionadas establecidas en la Ley Núm. 292-1999, según enmendada, mejor conocida como la *Ley para la Protección y Conservación de la Fisiografía Cársica de Puerto Rico*, 12 LPRA sec. 1151 *et seq.*, y en el Reglamento Núm. 8486, *supra*, prohíben la construcción de una vivienda unifamiliar en el Área Restringida del Carso. A su vez, adujo que la vivienda propuesta ocuparía una pequeña parte del solar y que la zona aledaña es un área desarrollada, impactada por actividad humana. Explicó que el solar está rodeado por residencias cercanas en sus tres colindancias, como también por negocios, iglesias, garajes de mecánica, fincas agrícolas y depósitos de chatarra. Planteó que el solar está propenso a convertirse en un vertedero clandestino. Manifestó que contrario a lo resuelto por el DRNA, su solicitud no implica la extracción, excavación y remoción de terreno o roca caliza ni la nivelación de terrenos con propósitos comerciales, como tampoco la fragmentación de ecosistemas de valor natural.

Posteriormente, el 21 de octubre de 2025 el DRNA realizó una Vista Administrativa. Así las cosas, el 17 de noviembre de 2025 dicha agencia emitió una *Resolución y Notificación* mediante la cual ordenó a la Secretaría Auxiliar de Permisos, Endosos y Servicios Especializados a emitir la autorización solicitada. En particular, el DRNA acogió el Informe del Oficial Examinador, el Lcdo. Samuel Acosta Camacho, quien concluyó que "la actividad para la que solicitan la Autorización no está expresada en el Reglamento Número 8486, Capitulo 9, *supra*, como actividades que no podrán recibir autorización para realizarse dentro del Área Restringida del Carso".[1]

En respuesta, el 9 de diciembre de 2025, la Lcda. Vilma Ojeda Rodríguez, en representación del interés público, presentó una *Moción en Solicitud de Reconsideración*. En esencia, sostuvo que la Tabla 8 de la Sección 4.1.6 del Reglamento Núm. 8486, *supra*, detalla las construcciones permitidas en la delimitación APE-RC y que la actividad propuesta no se encuentra contemplada en dicha Tabla, por lo cual se considera prohibida. Enfatizó que la jurisdicción para conceder una variación es de la Junta de Planificación. Por último, solicitó que se deje sin efecto la Orden del 17 de noviembre de 2025 para emitir la autorización solicitada por el recurrente.

El 11 de diciembre de 2025 el DRNA acogió la aludida reconsideración. El 4 de marzo de 2026 el DRNA emitió una *Resolución y Notificación* mediante la cual dejó sin efecto la *Resolución* dictada el 17 de noviembre de 2025 y sostuvo la denegatoria emitida el 16 de septiembre de 2025.

En particular, el DRNA acogió un Informe en el cual la Oficial Examinadora, la Lcda. Maria V. Ortega Ramírez, indicó que la finca en cuestión está dentro de la delimitación del APE-RC y que la Junta de Planificación es quien tiene jurisdicción para cambiar la calificación de una finca o terreno.[2] Por tal razón, el DRNA determinó que, de interesar una

---

[1] Apéndice 2 del recurso, pág. 24.
[2] Apéndice 1 del recurso, pág. 6.

variación, consulta de ubicación o solicitud de enmienda al Reglamento Núm. 8486, *supra,* la parte recurrente deberá presentar una solicitud ante la Junta de Planificación.[3]

Inconforme, el 30 de marzo de 2026 el señor Rivera Ramos, por derecho propio, acudió ante esta Curia mediante *Recurso de Revisión.* En esencia, la parte recurrente le imputó al DRNA haber errado al concluir que carece de jurisdicción para atender la Solicitud de Autorización y que, en su lugar, éste debía presentar su solicitud mediante una variación, consulta de ubicación o solicitud de enmienda al Reglamento Núm. 8486, *supra,* a la agencia correspondiente.

El 29 de abril de 2026 el DRNA presentó su *Escrito en Cumplimiento de Resolución.* Perfeccionado el recurso y con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II.**

**A.**

La Sección 4.1 de la Ley Núm. 38-2017, Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico ("LPAU"), 3 LPRA sec. 9671, dispone que las decisiones administrativas pueden ser revisadas por el Tribunal de Apelaciones. La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Hernández Feliciano v. Mun. Quebradillas,* 211 DPR 96, 113-114 (2023). Es norma reiterada que, al revisar las determinaciones de los organismos administrativos, los tribunales apelativos le conceden gran consideración y deferencia, por la experiencia y el conocimiento especializado que estos poseen. *Íd.*

Por su parte, la Sección 4.5 de la LPAU, 3 LPRA sec. 9675, establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "*evidencia sustancial que obra en el expediente administrativo*". Como vemos, la norma anterior nunca ha pretendido ser

---

[3] Apéndice 1 del recurso, pág. 2.

absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que, los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente contrarias a derecho. *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117 (2019).

Por otro lado, la citada Sección 4.5 de la LPAU, *supra,* dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". De modo que, el análisis no implica una deferencia automática por parte del tribunal revisor. *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR ___ (2025). Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Superintendente*, 201 DPR 26 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Íd.* Lo anterior responde a la vasta experiencia y al conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados. *Capó Cruz v. Junta de Planificación,* 204 DPR 581 (2020).

Por consiguiente, dada la presunción de corrección y regularidad que reviste a las determinaciones de hecho elaboradas por las agencias administrativas, éstas deben ser respetadas mientras la parte que las impugna no produzca evidencia suficiente para derrotarlas. *Graciani Rodríguez v. Garaje Isla Verde, supra.* Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque esta no tiene que ser la única o la más razonable. *Hernández Feliciano v. Mun. Quebradillas, supra.*

Por lo tanto, si al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley; (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4)

su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Íd.*

Acorde con lo antes expuesto, la revisión judicial de los dictámenes administrativos está limitada a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal. *Íd.* Por tanto, si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar, con suficiente evidencia, que la decisión del ente administrativo no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. *Capó Cruz v. Junta de Planificación, supra; Rebollo v. Yiyi Motors,* 161 DPR 69, 77 (2004). De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad. *O.E.G. v. Rodríguez,* 159 DPR 98, 118 (2003).

**B.**

La Ley Núm. 161-2009, según enmendada, conocida como la *Ley para la Reforma del Proceso de Permisos de Puerto Rico*, 23 LPRA sec. 9011 *et seq.*, fue promulgada con el propósito de establecer el marco legal y administrativo que regirá la solicitud, evaluación, concesión y denegación de permisos de uso y de construcción y desarrollo de terrenos por parte del Gobierno de Puerto Rico. *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 236 (2014). Asimismo, se creó la Oficina de Gerencia de Permisos (OGPe), entidad encargada de la evaluación, concesión o denegación de determinaciones finales y permisos relativos al desarrollo y el uso de terrenos. *Íd.*; Artículo 2.1 de la Ley Núm. 161-2009, 23 LPRA sec. 9012.

El Artículo 1.5 de la precitada ley incluye en sus definiciones los siguientes conceptos:

(14) Consulta de ubicación — Es el procedimiento ante la Oficina de Gerencia de Permisos o los Municipios Autónomos con Jerarquía de la I a la V, a los cuales se le haya delegado dicha facultad por medio del Convenio de Transferencia, para que evalúen, pasen juicio y tomen la determinación que estimen pertinente sobre propuestos usos de terrenos que no son permitidos ministerialmente y que no

pueden considerarse mediante otro mecanismo. En áreas no calificadas incluye propuestos usos de terrenos que por su naturaleza y complejidad requieran un grado mayor de análisis.

[...]

(93) Variación — autorización para lotificar o desarrollar una propiedad utilizando parámetros diferentes a los dispuestos en la reglamentación vigente y que sólo se concede para evitar perjuicios a una propiedad que, debido a circunstancias extraordinarias, la aplicación estricta de la reglamentación equivaldría a una confiscación de la propiedad. 23 LPRA sec. 9011.

### C.

La Ley Núm. 292-1999, según enmendada, mejor conocida como la *Ley para la Protección y Conservación de la Fisiografía Cársica de Puerto Rico*, 12 LPRA sec. 1151 *et seq.*, declara política pública del Estado la protección, conservación y el manejo de la fisiografía cársica de Puerto Rico. 12 LPRA sec. 1151. De este modo, se reconoce que esta fisiografía aporta funciones esenciales para la supervivencia natural y social de la Isla, tales como "albergar una alta cantidad de especies de flora y fauna; almacenar enormes abastos de aguas subterráneas; poseer terrenos de excelente aptitud agrícola y guardar un enorme potencial recreativo y turístico atribuibles a sus cualidades naturales". *Íd.* Por su parte, el Art. 5 de la Ley Núm. 292-1999, 12 LPRA sec. 1153, faculta al secretario del DRNA, entre otros asuntos, para adoptar la reglamentación necesaria para implantar las disposiciones de dicha ley.

### D.

El *Plan y Reglamento del Área de Planificación Especial del Carso*, Reglamento Núm. 8486, *supra*, tiene como objetivo implantar la política pública establecida en la Ley Núm. 292-1999, *supra.* Así pues, está dirigido a orientar el uso y desarrollo de los terrenos protegidos considerando la realidad ecológica, social, económica y reglamentaria de su contexto. Este reglamento establece los distritos sobrepuestos de Planificación Especial Restringida del Carso (APE-RC) y de Planificación Especial de la Zona Cársica (APE-ZC), cuyo fin es reconocer las características especiales de los suelos.

Conforme al Capítulo I del Reglamento Núm. 8486, *supra*, el APE-RC se define como sigue: "área dentro de la fisiografía cársica de importantes recursos geológicos, ecosistémicos e hidrológicos que están sujetos a serios conflictos en sus usos presentes y futuros y que, por lo tanto, requiere una planificación detallada [...]". En lo pertinente, la Sección 2.1.1 del Reglamento Núm. 8486, *supra*, regula la expedición de Autorización por el DRNA. De modo que, cualquier actividad propuesta dentro del APE-RC requiere una Autorización del DRNA para llevarse a cabo. Las siguientes actividades no podrán recibir autorización para realizarse dentro del Área Restringida del Carso APE-RC:

   a) Extracción de materiales de la corteza terrestre para propósitos comerciales y explotaciones comerciales, toda vez así lo dispone la [Ley Núm. 292-1999].
   b) Creación de vertederos de desperdicios domésticos, desperdicios peligrosos o desperdicios especiales o industriales no peligrosos.
   c) Actividades que tiendan a la fragmentación de ecosistemas de valor natural.
   d) No se otorgarán permisos simples ni exenciones para el movimiento de la corteza terrestre para propósitos comerciales o de nivelación en la zona cársica.
   e) Actividades agrícolas que tiendan a la exterminación total de la vegetación del área o que la misma implique la reducción sustancial, ya sea dentro de una misma especie, entre especies o ecosistema; uso de plaguicidas, y yerbicidas o cualquier biocida no degradable por acción biológica, química o fólica que pueda filtrarse a los acuíferos. Sec. 2.1.1 del Reglamento Núm. 8486, *supra*.

De igual forma, los vertederos, el depósito de chatarra y las canteras están clasificados como incompatibles con la conservación del carso. Sec. 4.1.4 del Reglamento Núm. 8486, *supra*. Cabe destacar, además, que el reglamento en cuestión dispone que las siguientes actividades están prohibidas y/o condicionadas en el Área Restringida del Carso:

   1) Extracción, excavación y remoción de roca caliza con propósitos comerciales o de nivelación de terrenos sin una autorización del Secretario al amparo de la Ley Número 132 de 25 de junio de 1968, según enmendada, conocida como "Ley de Arena, Grava y Piedra", según enmendada, y su respectivo reglamento. No se otorgarán permisos simples ni exenciones para estos propósitos en la zona.
   2) Creación de vertederos de desperdicios domésticos, desperdicios peligrosos o desperdicios especiales o industriales no peligrosos en la zona cársica, quedará prohibido.
   3) Actividad agrícola que tienda a la exterminación total de la vegetación del área o que la misma implique la reducción sustancial, ya sea dentro de una misma especie, entre especies o ecosistema; uso de plaguicidas, yerbicidas o cualquier biocida no degradable por acción biológica, química o fólica que pueda filtrarse a los acuíferos. No obstante a lo anterior se promoverá

aquella actividad agrícola que no menoscabe los recursos naturales (agricultura orgánica, agricultura ecológica).

4) Construcción de caminos, carreteras, u otras vías de acceso sin la autorización del Secretario del DRNA.

5) Construcción de infraestructura para el disfrute de áreas escénicas sin la autorización del Secretario del DRNA.

6) Fragmentación de ecosistemas de valor natural.

7) Deforestación, selectiva o total, remoción de la vegetación nativa y endémica para actividades comerciales de diseño de paisajes, y remoción de material leñoso vivo para la generación de carbón vegetal sin la debida evaluación y autorización bajo las disposiciones de la Ley Núm. 292 del 21 de agosto de 1999 y de los reglamentos que se desprendan de otras leyes y reglamentos aplicables.

8) Remoción, caza, captura, o exterminio de la fauna silvestre cuyo hábitat sea la zona cársica sin la debida autorización del Secretario del DRNA.

9) Construcción o instalación de torres o antenas para líneas de transmisión eléctrica o antenas para comunicación sin la debida autorización del Secretario bajo las disposiciones de esta Ley.

10) Creación de proyectos de ecoturismo sin la debida autorización del Secretario del DRNA. Sec. 4.1.5 del Reglamento Núm. 8486, *supra.*

En virtud de lo anterior, las variaciones de construcción y los proyectos de urbanización vía excepción constituyen limitaciones en el distrito APE-RC. *Íd.* Por su parte, la Tabla 7 de la Sección 4.1.6 del citado reglamento señala que, entre otros distritos, en el distrito CR no se permitirá la segregación de terrenos. Asimismo, la Tabla 8 de la referida sección establece las condiciones y restricciones de construcción en el APE-RC en los siguientes distritos: R-A, R-I, RT-1, AD, IL, I-P, C-L, CT, C-I, C-C, y Agrícola. Sec. 4.1.6 del Reglamento Núm. 8486, *supra.* A su vez, se advierte que no se permitirán proyectos de urbanización dentro del distrito APE-RC. Sec. 4.1.7 del Reglamento Núm. 8486, *supra.*

Respecto a las políticas de enmiendas a los distritos subyacentes APE-RC y APE-ZC, el citado reglamento señala que **en el distrito APE-RC no se considerarán cambios a las calificaciones subyacentes a través del proceso ordinario de cambio de calificación. En cambio, lo anterior debe realizarse a través de una solicitud de enmienda al Reglamento Núm. 8486,** *supra,* **ante la Junta de Planificación**. Sección 4.4.1 del Reglamento Núm. 8486, *supra.* (Énfasis suplido).

**E.**

En lo pertinente, el *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y*

*Operación de Negocios*, Reglamento Núm. 9473 del 16 de junio de 2023 (vigente) dispone en la Sección 6.1.23.3 de la Regla 6.1.23 que los siguientes usos serán permitidos en la categoría de Conservación de Recursos, "siempre que no conflijan con la conservación del recurso o la estabilización de los terrenos":

a. Instalaciones recreativas y ecoturísticas
b. Instalaciones públicas
c. Agrícola, utilizando las mejores prácticas de manejo
d. Usos agrícolas, utilizando las mejores prácticas de manejo, principalmente, actividades relacionadas con la agro-forestería y la silvicultura, también los cultivos hortícolas y algunas empresas pecuarias compatibles, tales como la apicultura y la acuacultura.
e. Silvicultura
f. Edificios o estructuras determinadas en función de la naturaleza de la actividad a realizarse, se ubicarán en los lugares donde conlleve el menor efecto adverso.
g. Instalaciones para servicios de infraestructura que sean necesarias para los usos permitidos.
h. Construcción de estructuras accesorias a los usos permitidos.
i. Otros usos mediante consulta de ubicación ante la Junta Adjudicativa de la OGPe.[4]

### III.

En el recurso que nos ocupa, la parte recurrente sostiene que erró el DRNA al concluir que carece de jurisdicción para atender su Solicitud de Autorización, por considerar que esta debía gestionarse a través de una variación, consulta de ubicación o solicitud de enmienda al Reglamento Núm. 8486, *supra*. Aduce que los criterios utilizados para justificar la denegatoria no le aplican a la actividad propuesta en su solicitud.

Por su parte, la parte recurrida arguye que la parcela donde se propone realizar la construcción de una estructura residencial está dentro del distrito APE-RC, y consecuentemente, le son de aplicación las prohibiciones establecidas en el Reglamento Núm. 8486, *supra*. En síntesis, plantea que el corte o extracción de materiales de la corteza terrestre para la construcción de una estructura residencial en la parcela en cuestión es incompatible con los objetivos establecidos en la Ley Núm. 292-1999 de

---

[4] Según lo dispuesto en la Sección 19.26.2 del Reglamento Conjunto de Permisos para Obras de Construcción y Usos de Terrenos del 29 de noviembre de 2010, los usos permitidos en los Distritos CR son: a) facilidades recreativas, b) facilidades públicas, c) Agrícola, utilizando las mejores prácticas de manejo, d) hospedajes especializados, e) otros usos de acuerdo con lo establecido en el Capítulo 26 (Excepciones).

conservar las funciones ecológicas del Área de Planificación Especial Restringida del Carso. Aduce que la prohibición de la nivelación de terrenos en la fisiografía cársica aplica a la actividad propuesta. Asimismo, manifiesta que los distritos sobrepuestos establecidos en el Reglamento Núm. 8486, *supra* determinarán las prohibiciones o la intensidad de las actividades actuales y propuestas en la fisiografía cársica. Veamos.

Surge del expediente de epígrafe que, el 4 de noviembre de 2024 el señor Rivera Ramos presentó ante el DRNA una Solicitud de Autorización para la construcción de una vivienda unifamiliar en un terreno que está dentro de la delimitación APE-RC y en un área calificada como CR. Luego de varios incidentes procesales, el 4 de marzo de 2026 el DRNA emitió una *Resolución y Notificación* mediante la cual sostuvo la denegatoria impartida el 16 de septiembre de 2025.

Aunque lo solicitado por el recurrente no se describe textualmente como una actividad prohibida o condicionada en el APE-RC, lo cierto es que **la vivienda propuesta no se precisa como un uso permitido en el distrito CR, conforme al Reglamento Núm. 9473, *supra*.** En ese escenario, la Sección 6.1.23.3 del precitado reglamento establece que se permitirán otros usos mediante consulta de ubicación ante la Junta Adjudicativa de la OGPe. A esos efectos, la Ley Núm. 161-2009, *supra*, expresamente dispone que la consulta de ubicación será el procedimiento, llevado a cabo ante la OGPe o ante aquellos Municipios Autónomos con Jerarquía de la I a la V a los cuales se les haya delegado la facultad, en el cual se evaluarán los propuestos usos de terrenos que no son permitidos ministerialmente y que no pueden considerarse mediante otro mecanismo. Art. 1.5 de la Ley Núm. 161-2009, *supra*.

Por otro lado, la Sección 4.4.1 del Reglamento Núm. 8486, *supra*, dispone claramente que en el distrito APE-RC no se considerarán **cambios** a las calificaciones subyacentes a través del proceso ordinario de cambio de calificación, **sino que deben realizarse a través de una solicitud de enmienda al Reglamento Núm. 8486, *supra*, ante la Junta de**

**Planificación.** En resumen, la construcción de una vivienda no se encuentra contemplada para el distrito CR, según fue solicitado por el recurrente. Ante ello, ciertamente, el DRNA carece de la facultad para cambiar la calificación de una finca o un terreno con el propósito de hacer viable la actividad solicitada.

Así pues, examinado el Reglamento Núm. 8486, *supra*, y el Reglamento Núm. 9473, *supra*, coincidimos con la determinación emitida por el DRNA. Por ello, en ausencia de abuso de discreción, arbitrariedad, ilegalidad o actuación irrazonable, no hallamos razón para apartarnos de la norma de deferencia que los tribunales deben observar respecto a los dictámenes de los foros administrativos. Siendo así, procede que confirmemos el dictamen emitido.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral del presente dictamen, se *confirma* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones